IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**UNITED STATES OF AMERICA**                                                          **PLAINTIFF**

v.                  Case No. 4:23-cr-00092 KGB

**LARON VASHON DEAN**                                                               **DEFENDANT**

## ORDER

Pending before the Court is the United States of America's motion *in limine* regarding testimony of the DNA analyst in this case (Dkt. No. 47). Defendant Laron Vashon Dean has filed a response in opposition to the United States's motion *in limine* (Dkt. No. 52). The United States has filed a reply to response regarding testimony of DNA analyst (Dkt. No. 61).

Also before the Court is Mr. Dean's motion *in limine* regarding reference to drugs (Dkt. No. 49). The United States filed a response to Mr. Dean's motion *in limine* regarding references to drugs (Dkt. No. 65).

In addition, before the Court is Mr. Dean's motion to suppress physical evidence (Dkt. No. 50). The United States has filed a response in opposition to Mr. Dean's motion to suppress (Dkt. No. 54). The parties agreed for the Court to rule on the motion to suppress without a hearing.

For the following reasons, the Court grants the United States's motion *in limine* (Dkt. No. 47). The Court denies Mr. Dean's motion *in limine* (Dkt. No. 49). The Court denies his motion to suppress physical evidence (Dkt. No. 50).

As to those matters about which the Court grants an *in limine* motion, all parties, their counsel, and witnesses are directed to refrain from making any mention through interrogation, *voir dire* examination, opening statement, arguments, or otherwise, either directly or indirectly, concerning the matters about which the Court grants an *in limine* motion, without first approaching the bench and obtaining a ruling from the Court outside the presence of all prospective jurors and

the jurors ultimately selected to try this case. Further, all counsel are required to communicate this Court's rulings to their clients and witnesses who may be called to testify in this matter. If any party believes that, due to evidence presented or argument made, the Court should reconsider an *in limine* ruling, the party should first approach the bench and obtain a ruling from the Court on a request to reconsider outside the presence of all prospective jurors ultimately selected to try this case.

### I.     Background

On June 9, 2021, around 2:00 p.m. law enforcement with the Arkansas State Police ("ASP") initiated a traffic stop due to the occupant not wearing a seatbelt (Dkt. No. 50-1, at 2). Mr. Dean was driving the vehicle (Dkt. No. 50-1, at 1). After a chase, Mr. Dean crashed the vehicle, left the vehicle, and fled (Dkt. No. 50-1, at 3). Upon searching the vehicle, officers found a firearm and a small amount of suspected marijuana in the vehicle (*Id*.). Mr. Dean was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

At trial, the United States intends to call DNA expert Karla Wright from the Federal Bureau of Investigation ("FBI") Laboratory's DNA Casework Unit ("DCU") located in Quantico, Virginia (Dkt. No. 47, at 1). The United States intends to have Ms. Wright testify about the DCU's analysis of items related to this case and her expert opinion about the items, without offering testimony from three forensic biologists at the DCU, Zachary Curran, Lily Wong, and Jessica McLamb, who performed certain tasks under the supervision of Ms. Wright (*Id*.). Defense counsel received a copy of Ms. Wright's report on August 17, 2023 (Dkt. No. 47, at 7). The United States provided defense counsel with the DCU digital case file revealing that the DNA work in this case was not solely conducted by Ms. Wright on April 1, 2024 (Dkt. Nos. 47, at 7; 52, at 2).

## II. Motion *In Limine* Regarding Testimony Of DNA Analyst

The United States maintains that Ms. Wright's testimony in this case satisfies Mr. Dean's rights under the Sixth Amendment's Confrontation Clause (Dkt. No. 47, at 7–13). "The Sixth Amendment's Confrontation Clause provides '[i]n all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004). Out-of-court statements of expert witnesses conducting scientific analysis of forensic evidence are subject to the Confrontation Clause. In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009), the United States Supreme Court concluded that an affidavit by a state laboratory analyst swearing that he had chemically tested a substance and found it to contain prohibited narcotics is a testimonial statement such that the affidavit could not be admitted into evidence absent an opportunity for the defendant to cross-examine the analyst. Similarly, the United States Supreme Court also determined in *Bullcoming v. New Mexico*, 564 U.S. 647, 663–65 (2011), that the Confrontation Clause applies to a signed statement attesting to analysis of a defendant's blood-alcohol content. This case is not like *Melendez-Diaz* or *Bullcoming* because here the United States intends to call Ms. Wright to testify regarding her report.

The United States Supreme Court noted in *Melendez-Diaz* that it had not held "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *See Melendez-Diaz*, 557 U.S. at 311, n.1. In *Williams v. Illinois*, 567 U.S. 50, 57–58 (2012), a case involving DNA evidence, the Supreme Court, in a plurality opinion, concluded that a non-testifying analyst's "[o]ut-of-court statements that are related by [a testifying] expert solely for the purpose of explaining the assumptions on which [the expert's] opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." The plurality in *Williams*

3

noted that the admission of expert testimony would "not prejudice any defendant who really wishes to probe the reliability of the . . . testing done in a particular case because those who participated in the testing may always be subpoenaed by the defense and questioned at trial." 567 U.S. at 58–59.

Circuit Courts that have addressed the issue have also ruled that the Confrontation Clause does not require individuals who process evidence to testify at trial. *See United States v. Murray*, 540 Fed. App'x 918, 921 (11th Cir. 2013) (determining that "an expert's reliance on a DNA profile produced by an outside lab does not run afoul to the Confrontation Clause."); *see also United States v. Kaszuba*, 823 Fed. App'x 77, 79 (3d Cir. 2020) (determining that toxicology report introduced through lab director rather than technician who actually performed the testing did not violate defendant's right under the Confrontation Clause because lab director compiled and signed the report, reviewed tests performed by the technicians, and did not simply parrot what the non-testifying technician found during testing); *Grim v. Fisher*, 816 F.3d 296, 310–11 (5th Cir. 2016) (rejecting habeas claim based on argument seeking to exclude a forensic laboratory report under the Confrontation Clause because the report was signed by a technical reviewer who confirmed and verified work performed by an analyst).

In a case from the United States Court of Appeals for the Eighth Circuit, the court determined, under plain error review, that allowing expert testimony from a testifying scientist, other than the one who performed the scientific tests, that DNA evidence matched the DNA evidence found on the gun did not violate the Confrontation Clause because the testifying scientist's "testimony concerned her independent conclusions" derived from the testifying scientist's peer review of the other scientist's test results, and the testifying scientist was subject to cross-examination. *United States v. Richardson*, 537 F.3d 951, 959-60 (8th Cir. 2008).

Mr. Dean points to *Roche v. Brown*, Case No. 19-cv-11090, 2023 WL 5529752, at *10 (E.D. Mich. Aug. 28, 2023), to support his motion, but *Roche* is a case where the United States District Court determined that the admission of testimony based on the DNA report violated the Confrontation Clause because the prosecution introduced a laboratory report through a witness who had not written the report or conducted the tests herself (Dkt. No. 52, at 8).  The facts in *Roche* were similar to those in *Bullcoming* and are distinguishable from the facts of this case.  In this case, the United States seeks to introduce a laboratory report signed by a witness who reached her independent conclusions in the report and who will appear and testify at trial.

Mr. Dean argues that there is a nationwide debate as to the testimonial status of DNA reports that is on-going (Dkt. No. 52, at 9).  As support for this contention, Mr. Dean notes that on January 10, 2024, the United States Supreme Court heard oral argument in *Jason Smith v. Arizona*, 144 S.Ct. 478 (2023).  At issue in *Smith* is "[w]hether the Confrontation Clause of the Sixth Amendment permits the prosecution in a criminal trial to present testimony by a substitute expert conveying the testimonial statements of a nontestifying forensic analyst, on the grounds that (a) the testifying expert offers some independent opinion and the analyst's statements are offered not for their truth but to explain the expert's opinion, and (b) the defendant did not independently seek to subpoena the analyst."  *Smith v. Arizona*, 2023 WL 2571950 (Petition for *Writ of Certiorari*, March 14, 2023).

The facts of *Smith* differ from those here.  In *Smith*, the state charged Mr. Smith with possessing dangerous drugs for sale, possessing marijuana for sale, and possessing narcotic drugs for sale.  *State v. Smith*, Case No. 1 CA-CR 21-0451, 2022 WL 2734269, *1 (Ariz. Ct. App. July 14, 2022).  At trial, the state called Department of Public Safety forensic scientist Greggory Longoni who testified that the substances seized were methamphetamine, marijuana, and cannabis.

5

*Id*.  Mr. Longoni reached his independent opinions based on his review of testing conducted by former Department of Public Safety forensic scientist Elizabeth Rast, who did not testify.  *Id*.  The state did not offer Rast's opinions or reports as evidence.  *Id*.  The Arizona Court of Appeals determined that the admission of Mr. Longoni's testimony did not violate Mr. Smith's confrontation rights because Mr. Longoni offered his independent expert opinion and was subject to full cross-examination.  *Id*., at *4.  The Arizona Court of Appeals determined that *Bullcoming* and *Melendez-Diaz* did not apply because those cases involved the unconstitutional admission of testimonial documents prepared by non-testifying witnesses.  *Id*. at 5.  It also determined that *Williams* did not entitle Mr. Smith to relief.  *Id*.

The *Smith* case does not address the particular issue raised in the United States's motion *in limine* in this case.  Unlike here, the *Smith* case involved testing on substances, not DNA.  Additionally, *Smith* involved substitution of an expert, but here the question is whether anyone whose testimony may be relevant in establishing the authenticity of the sample, or accuracy of the testing device, must appear in person.  In this case, Ms. Wright, the testifying witness, oversaw the team at DCU that performed the testing, including overseeing the extraction process and determining which extraction process to perform; Ms. Wright reviewed the data after the extraction process; Ms. Wright determined which type of amplification would be run; and Ms. Wright entered that information into the LIMS system.  Ms. Wright imported the raw data into the software, performed her own analysis, and wrote her conclusions in a report (Dkt. No. 47, at 2-4, 6).  For these reasons, Ms. Wright's testimony satisfies Mr. Dean's rights under the Sixth Amendment's Confrontation Clause, and the Court grants the United States's motion *in limine* regarding testimony of Ms. Wright in this case (Dkt. No. 47).

### III. Motion *In Limine* Regarding Testimony Reference To Drugs

Mr. Dean moves the Court to order that during the trial all references to the substance found in Mr. Dean's car be referred to as "suspected marijuana" rather than "drugs." The United States responds to Mr. Dean's motion *in limine*, and the United States asserts that the FBI field tested the green leafy material found in the vehicle and that it tested positive as marijuana (Dkt. No. 65, at 1). The United States represents that it intends to elicit testimony "that among the items the FBI discovered in Defendant's car were a backpack containing a substance that field tested positive as marijuana alongside his driver's license." (*Id.*). For these reasons, the United States maintains that it intends to refer to the substance as marijuana consistent with the results of the field test (*Id.*). Based upon the representation that the United States intends to elicit testimony that among the items the FBI discovered in the car were a backpack containing a substance that field tested positive as marijuana alongside Mr. Dean's driver's license, the Court denies Mr. Dean's motion *in limine* (Dkt. No. 49).

### IV. Motion To Suppress Physical Evidence

Mr. Dean contends that the physical evidence found in his vehicle, including the firearm, must be suppressed because police could not possibly have seen the alleged seatbelt violation that purportedly prompted the attempted traffic stop making the evidence inadmissible fruit of the poisonous tree (Dkt. No. 50, at 1). The United States filed a response in opposition to the motion to suppress (Dkt. No. 54). The United States asserts that Mr. Dean's response to the attempted traffic stop, during which he broke numerous laws, provides an independent ground for seizure (*Id.*, at 1–2). Further, the United States points out that Mr. Dean abandoned his vehicle on a public roadway necessitating that it be towed, which gives law enforcement officers permission to conduct an inventory search (Dkt. No. 54, at 2).

Whether the officer had grounds for the initial attempted traffic stop is of no consequence because Mr. Dean resisted the stop and led the officer in a chase providing grounds for a legitimate arrest. *See United States v. Pickens*, 58 F.4th 983, 988 (8th Cir. 2023) ("Resistance to even an illegal stop or arrest can furnish grounds for a legitimate arrest.") (citing *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006)). After a chase, Mr. Dean crashed the vehicle, left the vehicle, and fled (Dkt. No. 50-1, at 3). Mr. Dean's wrecked car was abandoned and sitting in a public roadway. The physical evidence would have inevitably been discovered because law enforcement officers called a wrecker to tow Mr. Dean's vehicle, which permitted officers to perform a lawful inventory search. *See, e.g.*, *United States v. Williams*, 777 F.3d 1013, 1015–16 (8th Cir. 2015); *United States v. Alvarez-Gonzelez*, 319 F.3d 1072 (8th Cir. 2003). Accordingly, the Court denies Mr. Dean's motion to suppress physical evidence (Dkt. No. 50).

### V.     Conclusion

The Court grants the United States's motion *in limine* regarding testimony of DNA analyst (Dkt. No. 47). The Court denies Mr. Dean's motion *in limine* regarding reference to drugs (Dkt. No. 49). The Court denies his motion to suppress physical evidence (Dkt. No. 50).

So ordered this 24th day of April, 2024.

_____
Kristine G. Baker
Chief United States District Judge